JOHN W. SMITH, DEFENDANT IN ERROR, v. ATLANTIC CITY RAILROAD COMPANY, PLAINTIFF IN ERROR.

Submitted December 6, 1909—Decided June 20, 1910.

The plaintiff and defendant made a contract, by the terms of which the defendant was to furnish and put down a siding leading into the coal yard of the plaintiff, from the main line of the defendant's railway. Relying upon this agreement the plaintiff erected sheds, coal bins, and incurred other expenses incident to the preparation of the property for a coal yard, and the defendant, on its part, built the siding and delivered coal over it into the plaintiff's yard for a considerable period of time. By the terms of the contract the plaintiff was to pay the cost of putting in the siding and connecting it with the main line. After having paid a part of this cost, the defendant, upon the ground that the residue was not paid, removed the switch connecting the siding with the main line, and thereby destroyed the plaintiff's business. *Held*, that in a suit by plaintiff to recover damages for the destruction of his business because of the removal of the switch and refusal to deliver coal to the plaintiff, the non-payment of the residue of the cost was no defence to such action.

---

On error to the Camden Circuit Court.

For the plaintiff in error, *J. Willard Morgan.*

For the defendant in error, *John W. Wescott.*

The opinion of the court was delivered by

BERGEN, J.    The plaintiff avers in his declaration that the defendant agreed with him to put down and construct a siding or turnout, and connect it with the main line of the

defendant's railway, running from thence into plaintiff's coal yard, and further, that the defendant agreed to keep the said siding and turnout in repair for the use of the plaintiff as long as he carried on the business of selling coal from said coal yard; that the defendant carried out its agreement by putting down the siding and delivering coal over it into plaintiff's yard, but thereafter violated the agreement by removing the switch, the result of which was that the plaintiff's business was destroyed. The plaintiff's testimony sustained the matters averred in his declaration, and also disclosed that the agreement which he sets up was an oral one, and contained the further terms that plaintiff was to pay the cost of putting in the siding, and that he had paid a part thereof. It also appeared that the defendant, insisting that the agreement should be reduced to writing, prepared and mailed to the plaintiff a written agreement to be executed by him; that the plaintiff signed the agreement and forwarded it to the defendant who refused to, and never did, sign it. The agreement thus partially executed was produced by the plaintiff and offered in evidence, and by its terms substantially affirmed the oral arrangement as testified to by the plaintiff. At the close of the plaintiff's case there was a motion for nonsuit, based upon the single ground that, according to the agreement testified to by the plaintiff, and as expressed in the partially executed agreement, the plaintiff was required to pay the cost of putting in the switch and siding, and that not having paid in full the defendant was entitled to remove the switch. This motion was refused, and we think properly. The plaintiff's case showed that he had, relying upon the promise of the defendant, expended large sums of money in building sheds and coal bins for the purpose of carrying on the coal business, which he would not have done except upon the promise of the defendant to put in the siding; that the siding was put in and used by the defendant to deliver coal to him in cars in the yard, and that he had made partial payment of the cost. The plaintiff also testified that he was to have a reasonable time within which to make the payment. Under these circumstances the remedy of the

defendant was to sue for the residue of the unpaid cost, if, as it claims, it was due, and it could not destroy the plaintiff's business and commit a breach of its contract simply because there was some part of the consideration remaining unpaid.

The case for the defendant was that the conversation which the authorized agent of the defendant had with the plaintiff did not result in the making of an agreement, but that the proposition made by the plaintiff was to be considered, and that subsequently plaintiff was told by the agent that the company had approved the proposition, and that the siding would be put in upon the understanding that the plaintiff would pay the cost of·the same including the frog and switch, and execute a formal written agreement expressing the contract, which plaintiff agreed to do; that pending the preparation of the agreement the siding was put in and used for delivering coal to the plaintiff in his yard; that the bill for the cost of putting in the siding was rendered, and shortly thereafter $100 was paid on account, the total cost being $295.87; that the written agreement was prepared by defendant and sent to plaintiff for execution, who, before signing and returning it to defendant, changed the word "including" to "excluding," where it referred to payment of the cost of a frog and switch, and that therefore the agreement to execute a written contract was not performed by the plaintiff; that the switch was taken out because the agreement as tendered was not executed, and also for the reason that the plaintiff had not paid the balance due for the cost of putting in the switch. The agreement was produced and admitted in evidence, and contains the word "including," although defendant claimed that it had been restored to its original form since it was presented to it. At the close of the whole case the defendant renewed its motion, basing it upon the ground that the residue of the cost of putting in the switch, frog and sid-·ing had not been paid. The refusal to execute the written agreement in the form furnished by the defendant was waived, counsel saying that if plaintiff "had not changed the word 'in' to 'ex,' then to 'in' afterwards, it would be all right. That is the reason the railroad company would not accept it,

but we will take it now as it is; it is just exactly the way the railroad company wanted it. The testimony he produces here was that that was what he was willing to do, that he would bear the cost of the frog and siding. Now, that he didn't do; he paid $100 on account, and after numerous urgings he would not pay, and we had the right to take out the switch." Thus it appears that the sole ground upon which the motion rested was non-payment of the balance due for the cost of putting in the siding. The right to take out the siding is expressed in the contract as follows: "And that the party of the first part shall have the right to remove the switch and so much of the material of the said siding as shall remain on the property of the party of the first part, at any time when the party of the second part, his heirs or assigns, shall cease to operate the said coal yard and use the said siding in connection therewith for the period of ninety days," and it contains no condition that defendant may remove the switch because of non-payment of the expense of putting in the switch and siding. The case was not as strong for the defendant at its close as when the motion to nonsuit was made at the end of plaintiff's case, and the motion to nonsuit at the close of the case was properly refused.

Another error assigned was that the court did not decide as a matter of law that the plaintiff had violated his contract, but submitted the same to the jury, and also that the court submitted to the jury the question as to terms of payment, although they were stated in the written contract. The only violation of the contract alleged to have been made by the plaintiff is his refusal to pay according to the terms of the contract. Assuming that the contract admitted in evidence states the agreement between the parties, all that it expresses, with reference to payment, is that the plaintiff was to pay the cost and expense in building this siding including the frog and switch. No time for payment is fixed, and if it be considered due upon the completion of the work, defendant had a remedy in an action for its recovery. The court charged the jury that "if the written agreement represented the contract between the parties, then the plaintiff was in default,

and it was his duty, upon completion of the work and upon demand for payment, to pay, and if he failed to do so the company had the right to spike the siding and stop the plaintiff's further use of it, and that if they found such was the real contract then the defendant was entitled to a verdict." This was too favorable to the defendant, because the case showed that the plaintiff had made, with the consent of the defendant, a partial payment, and, having accepted it, the defendant had no right to abrogate the contract because only a part of the consideration had been paid.

The only other assignment supported by the bill of exceptions is to the order of the trial court allowing an amendment of the declaration to meet the proofs on the issue actually tried by the parties. There is no error in that regard in this case.

Finding no error in the record the judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ. 15.

*For reversal*—None.